**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM ABRAMOVITZ,** | : | **CIVIL NO. 1:11-CV-1023** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **WILLIAM SCISM,** | : | |
| | : | |
| **Respondent.** | : | |

**REPORT AND RECOMMENDATION**

I.   **Introduction**

This case presents a parable regarding the importance of clarity in communications.  In August 2010, prison disciplinary proceedings were commenced against the petitioner, William Abramovitz, following what Abramovitz alleges was a misunderstanding regarding remarks he made during a group drug therapy session at a halfway house.  Now, one year later, Abramovitz is in federal court seeking to challenge the outcome of this disciplinary hearing, citing another alleged failure of communication. This failure, which is confirmed in part by the respondents, relates to the fact that there was a three month delay in providing Abramovitz with the full factual basis of the reasons for this prison disciplinary action, a delay which prejudiced Abramovitz who waited until he was informed of the factual basis for the prison's

actions before pursuing administrative appeals, only to be told that his administrative remedies were untimely.

On the unique facts of this case, where the government apparently concedes that the factual basis for its disciplinary decision stripping the petitioner of 13 days' good time credit was not timely explained to him, and the delay in this communication then served as the basis for denying Abramovitz any administrative recourse, we find that considerations of procedural due process require clearer and more timely communication by the respondents of these material facts affecting this inmate's legal rights in these proceedings. Therefore, we recommend that this case be remanded for additional proceedings.

## II.   Statement of Facts and Case

### A.   Abramovitz's Disciplinary Proceedings

The pertinent facts can be simply stated: The petitioner, William Abramovitz, is a federal prisoner who is currently serving a 60-month sentence for drug trafficking. (Doc. 11, Ex 1.) On July 15, 2010, Abramovitz was released to a Residential Re-entry Center (RRC), a halfway house, in Pittsburgh, Pennsylvania, and on July 21, 2010, he began participating in the Transitional Drug Abuse Program ("TDAT") at that facility.(Id.)

One month later, on August 17, 2010, an Incident Report  was written against Abramovitz charging him with violating the conditions of this community based drug treatment program. (Id.,   Romano Dec. Ex. 1 ¶ 3; Incident Report Att. D at 1.) According to this incident report:

> On August 17, 2010, Federal BOP Resident William Abramovitz received an infraction notice from Kelley McNichols with Addiction Recovery Services for failure to meaningfully engage in treatment. The infraction notice specifically state[d] that:
>
> Mr. Abramovitz has failed to meaningfully engage in treatment and reported being externally motivated to treatment. Mr. Abramovitz has openly stated that he has been honest  throughout RDAP and TDAT in that he is 99% sure that he will abuse marijuana in his future. Mr. Abramovitz does not acknowledge addiction in his history nor does he associate unmanageability as a result of drug use. Mr. Abramovitz endorses criminal thinking, such as. mollification and super-optimism. Mr. Abramovitz reported that he does not want to be in treatment, he only took RDAP to receive the time off his sentence, and that he is just going through the motions in TDAT.

(Id.).

Abramovitz was notified of the charge against him on August 17, 2010, when a copy of the Incident Report was delivered to him, and he was given an opportunity on August 18, 2010, to comment on this charge to an investigating official. (Id.) In his comments Abramovitz attributed the disciplinary citation to a miscommunication between himself and the therapeutic staff stating that "he feels that his statements were taken out of context and he was trying to be honest during the group. . . . he disagrees with the last section of the narrative he did not make the statement." (Id.)

The following day, August 19, 2010, a hearing was held at the halfway house regarding this allegation that Abramovitz had not been properly invested in the treatment process. (<u>Id</u>., Att. F to Romano Decl. Ex. 1). Abramovitz was notified of the hearing on the date that it occurred, shortly before the hearing, and asked that five inmates who were present at the group therapy session be called as witnesses. (<u>Id</u>.) This request was denied because the inmates were unavailable but the disciplinary committee agreed to accept and consider written statements from these five witnesses. (<u>Id</u>.) Those inmate statements generally supported Abramovitz's claim that his remarks had been misconstured, and charecterized Abramovitz's comments about this drug relapse potential and motivation in attending drug treatment as candid responses to questions posed by the therapist. (<u>Id</u>.)

At the time of this disciplinary hearing, the Bureau of Prisons had adopted a program statement, Program Statement 7300.09, which governed disciplinary proceedings at halfway house, residential re-entry centers. This program statement required community corrections facilities to establish internal disciplinary procedures which complied with the due process mandates defined by the United States Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). (<u>Id</u>.) Inmates cited for rules infractions were then entitled to receive a hearing before the center's disciplinary committee, which would adjudicate the alleged violation, and submit a comprehensive hearing packet, along with a recommended disposition, to the Bureau of Prisons

designated Disciplinary Hearing Officer (DHO). (Id.)  The DHO, in turn, would review the center's disciplinary hearing materials to ensure that procedural due process requirements have been met, and to determine a final sanction for any infractions found to be supported by the evidence. (Id.) After conducting this review the DHO would then make a final decision regarding the sanction to impose against the inmate. (Id.) See also Fernandes v. Warden, USP-Lewisburg, No. 06-2394, 2007 WL 1120520 (M.D.Pa. April 13, 2007).

In this case, following the institution hearing, the center's disciplinary committee concluded that Abramovitz had failed to meaningfully participate in drug therapy, and recommended sanctions including disciplinary transfer and loss of appropriate good conduct time.( Id.) The committee documented the reason for these sanctions stating that it was recommending this discipline "because of resident Abramovitz's apparent lack of investment in TDAT services." (Id.) Consistent with the requirements of Program Statement 7300.09, the disciplinary committee forwarded its findings and recommendation to a Disciplinary Hearing Officer (DHO) for review, and notified Abramovitz that he had a right to appeal the final decision within 20 days of the imposition of the sanctions. (Id.)

While these initial proceedings appear to have complied with agency guidelines, it is as this point that the procedural posture of this disciplinary hearing becomes murky, and is marked by an acknowledged failure for several months to disclose the

full factual underpinnings of this disciplinary decision to Abramovitz. According to prison records, the DHO reviewed and approved the disciplinary hearing materials relating to Abramovitz on September 3, 2010, imposing a sanction of the loss of 13 days good time credits. (Id.) There is no indication that Abramovitz was notified of this action. One month later, on October 6, 2010, the DHO noted that this good time credit disallowance was entered onto Abramovitz's records. (Id., Att. F to Romano Decl. Ex. 1 at 14.) Once again, there is no indication that Abramovitz received notice of this action.

Instead, the first notice of this disciplinary action was sent to Abramovitz on October 28, 2010, when the Community Corrections Manager sent a notice to Abramovitz with copies of the Good Conduct Time Action Notice, the CDC Report, and a BOP administrative remedy form for appeal.(Id. at 15.) By the time that this notification was issued, Abramovitz had been removed from the halfway house and was confined at the Low Security Correctional Institution, Allenwood.

When this notice was sent to Abramovitz, prison officials acknowledged that the documents provided to Abramovitz were both incomplete and confusing. This confusion was first noted by prison officials as early as October 28, 2010, date the action notice was sent to Abramovitz, when Abramovitz's Case Manager contacted the DHO, asking if there had been an "in-person hearing" held as a result of the disciplinary action at the RRC and noting that there was, at that time, no copy of an

incident report in Abramovitz's BOP central file. (Doc. 3.)  Twelve days later, on

November 9, 2010, the Case Manager contacted the Community Corrections Manager

at the halfway house reporting that Abramovitz's disciplinary paperwork was

incomplete and stating that Abramovitz had received "a copy of the DHO report, but

not the incident report." (Id.)  The Bureau of Prisons admits that this communications

failure persisted until mid-November 2010, three months after the disciplinary hearing

was conducted, acknowledging in a memorandum from Abramovitz's Unit Manager

at LSCI Allenwood that Abramovitz "did not receive a complete copy of all evidence

included in [the] incident report . . . until November 16, 2010." (Id. at 37.)

Abramovitz also alleges, without contradiction by the respondents, that he had been

assured by prison officials that his deadlines for pursuing administrative appeals

would not commence until November 16, 2010, when he received a complete copy of

the evidence used to convict him of this prison infraction.

Armed with this information on November 16, 2010, Abramovitz filed an

administrative appeal on December 6, 2010, within twenty days of receiving a

complete copy of the evidence underlying this infraction.  Despite the assurances

Abramovitz claims that he had previously received that his time to lodge an appeal

would begin to run from the date upon which he was provided with the evidence

supporting his disciplinary finding, Abramovitz's appeal, and all subsequent

administrative appeals, were denied by prison officials as untimely.  In reaching this

result, it appears that prison officials did not use November 16, 2010, the date upon which Abramovitz finally received a complete disciplinary package, as the starting date for his administrative appeal deadline, as Abramovitz alleges they had promised to do.  Instead, prison officials calculated the appeals deadline in this case from the date of the delivery of the initial, incomplete, and flawed, disciplinary notice to this prisoner.

### B.    Abramovitz's Contentions in This Habeas Petition

Frustrated in his efforts to address this matter through the Bureau of Prisons grievance processes, Abramovitz filed the instant petition on May 27, 2011, (Doc. 1), challenging this prison incident report issued to him and sanctions subsequently imposed upon him by the corrections disciplinary committee. (Id.)  As we construe it, in his petition Abramovitz advances both general and specific claims of wrongdoing by prison staff.  First, Abramovitz levels a procedural due process challenge to these proceedings arguing that his due process rights were violated during the disciplinary process. (Id.)  After asserting a denial of due process, Abramovitz levels more specific charges of evidence tampering, coupling a claim of factual innocence with an allegation that the evidence presented in the hearing was falsified and insufficient to justify a finding that he violated prison rules. (Id.)  Abramovitz also suggests that due process required that he be given a separate hearing before the DHO, a second hearing

which is not provided for by the Bureau of Prisons Program Statement 7300.09, which prescribes procedures for disciplinary hearings in community corrections centers.

This matter has been fully briefed by the parties. (Docs. 1 and 11.)  In this process the respondents have candidly acknowledged that Abramovitz did not timely receive full access to the evidence which was used to find him guilty of this disciplinary infraction and was then denied an opportunity to challenge this disciplinary action because he waited until he was provided a full disciplinary record before pursuing his administrative remedies.

On these unique facts, for the reasons set forth below, it is recommended that this petition be granted and this matter be remanded for further disciplinary hearings.

### III.   Discussion

### A.   Procedural Standards for Prison Discipline Hearings

In his habeas petition Abramovitz challenges the procedures employed by prison officials during this disciplinary process, alleging that these procedures denied him due process, and prejudiced him in the presentation of his claims in this disciplinary hearing process.  Although Abramovitz faces an exacting burden of proof in advancing this procedural due process claim in a prison discipline context, we find on the unique facts of this case that he has made a sufficient claim to warrant remand for further disciplinary proceedings.

With respect to procedural due process concerns, like those voiced by Abramovitz in his petition, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.  Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974).[1]

With respect to the procedural due process requirement that an inmate be provided with access to written records of the disciplinary proceedings, the bedrock

---

[1] The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306.

considerations of fairness that animated this requirement were described by the Supreme Court in the following terms:

> Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

Wolff v. McDonnell, 418 U.S. 539, 565(1974).

Mindful of the concerns underlying the procedural due process requirements which apply to prison disciplinary hearings, we turn to a consideration of what due process required in Abramovitz's case.

**B.      The Procedures Generally Prescribed in Program Statement 7300.09, for Prison Discipline at Residential Re-entry Centers Satisfy Due Process Requirements, But the Respondents' Failure to Fully Comply With Those Procedures in This Case Compels a Remand of This Matter for a New Hearing**.

In this petition Abramovitz challenges, on due process grounds, the procedure used to discipline him. At we construe the petition, Abramovitz's challenges are both

general and specific, in that Abramovitz challenges the procedures prescribed for such hearings generally by Bureau of Prisons Program Statement 7300.09, and also attacks the way in which these procedures were applied to his case.

To the extent that Abramovitz invites us to conclude that Bureau of Prisons Program Statement 7300.09, on its face violates due process, we will decline this invitation. In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures, including guidelines for discipline hearings at residential re-entry centers. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in <u>Wolff</u>. <u>See Von Kahl v. Brennan</u>, 855 F.Supp. 1413 (M.D. Pa. 1994). The Bureau of Prisons Program Statement 7300.09, which governs disciplinary proceedings at residential re-entry centers, is one such procedure. Program Statement 7300.09 requires community corrections facilities to establish internal disciplinary procedures which comply with the due process mandates defined by the United States Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Inmates cited for rules infractions then are entitled to receive a hearing before the center's disciplinary committee, which adjudicates the alleged violation, and submits a comprehensive hearing packet, along with a recommended disposition to the Bureau of Prisons designated Disciplinary Hearing Officer (DHO). (<u>Id.</u>)   The DHO, in turn, reviews the

12

center's disciplinary hearing materials to ensure that procedural due process requirements have been met, and to determine a final sanction for any infractions found by the committee to be supported by the evidence. (Id.) After conducting this review the DHO then makes a final decision regarding the sanction to impose against the inmate. (Id.) See also, Fernandes v. Warden, USP-Lewisburg, No. 06-2394, 2007 WL 1120520 (M.D.Pa. April 13, 2007).

Throughout this hearing process the inmate Program Statement 7300.09 requires that inmates be provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction. Specifically, corrections officials must give the inmate advance written notice of the charges before any disciplinary hearing. The inmate is also entitled to assistance at this hearings. In particular, staff must provide the inmate with a staff member to represent him at any disciplinary hearing.

Furthermore, the inmate has a series of procedural rights at the hearing itself. Thus, at the disciplinary hearing, the inmate is entitled to make a statement and present documentary evidence. The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents. While the hearing officer need not call repetitive witnesses or adverse witnesses, those witnesses who have information directly relevant to the charges and who are

reasonably available should be called. The inmate has the right to be present throughout the hearing except during deliberation or when institutional security would be jeopardized.

In addition, the regulations prescribe procedural standards for disciplinary decision-making following a hearing, and call for inmates to receive proper notice of disciplinary decisions and the factual basis for those decisions. Thus, the regulations require that the hearing officials must consider all evidence presented at the hearing. The decision then must be based on the facts presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. Finally, the hearing officer must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the disciplinary findings, the disciplinary decision and the specific evidence relied upon in reaching that decision. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate. Finally, in the community corrections setting, the DHO reviews the center's disciplinary hearing materials to ensure that procedural due process requirements have been met, and to determine a final sanction for any infractions found by the committee to be supported by the evidence.

Abramovitz, however, appears to suggest in his petition that more was required here, and faults the entire disciplinary process set forth in Bureau of Prisons Program

Statement 7300.09, arguing that he is entitled to further procedural due process than that prescribed by Program Statement 7300.09, and specifically asserting that he should have received a separate hearing before the DHO imposed sanctions against him. The difficulty with this assertion is that every court which has examined the procedures established by Program Statement 7300.09 has held that these procedures, properly applied, satisfy the procedural due process requirements established by the Supreme Court in Wolff. See, e.g., Fernandes v. Warden, USP-Lewisburg, No. 06-2394, 2007 WL 1120520 (M.D.Pa. April 13, 2007); Castro v. United States Bureau of Prisons, No. 04-254, 2005 WL 2205791 (D.N.J. Sept. 8, 2005).

While we find that strict adherence to the procedural requirements of Program Statement 7300.09 satisfies procedural due process in the prison discipline setting, in this case it is conceded that some of the requirements of this policy were not fully satisfied in a timely manner. Specifically, the Bureau of Prisons candidly acknowledges that there was a regrettable, and unaccountable, failure to timely provide Abramovitz with a full statement of the grounds for this disciplinary action, including a complete recital of the evidence relied upon to find Abramovitz guilt of this infraction. Since Program Statement 7300.09 imposes less rigorous procedural safeguards on disciplinary hearings at residential re-entry centers than those typically employed within federal prisons, scrupulous adherence to these procedures is an

essential component of procedural fairness in this setting. In this case, on the unique facts conceded by the respondents, we find that the process employed in Abramovitz's case did not fully comport with these due process requirements, and failed in a material and prejudicial way to protect Abramovitz's rights in these proceedings. Therefore, it is recommended that this matter be remanded for further disciplinary proceedings.

When considering due process challenges to disciplinary procedures based upon an agency's failure to comply with its own rules, courts have held that "in such circumstances Petitioner would have to show prejudice from the agency's [alleged] failure to follow its own regulations. See Thibodeau v. Watts, 2006 WL 89213, at *4 (M.D.Pa.)(Caldwell, J.)(citing Von Kahl v. Brennen, 855 F.Supp. 1413, 1418 (M.D.Pa.1994))" in order to obtain relief. Fernandes v. Warden, USP-Lewisburg, No. 06-2394 2007 WL 1120520, * 2 (M.D.Pa. April 13, 2007). Thus, in the absence of some specific, demonstrable prejudice to the petitioner resulting from procedural inadequacies in a community corrections disciplinary hearing, general challenges to the procedures set forth in Program Statement 7300.09 have been rejected by the courts. Fernandes v. Warden, USP-Lewisburg, No. 06-2394, 2007 WL 1120520 (M.D.Pa. April 13, 2007); Simmons v. Hobart, No. 05-510, 2005 WL 2704904

(W.D.Wisc. Oct. 19, 2005); <u>Castro v. United States Bureau of Prisons</u>, No. 04-254, 2005 WL 2205791 (D.N.J. Sept. 8, 2005).

Here, however, we believe that Abramovitz has met this exacting standard for demonstrating a procedural due process claim arising out of the failure to properly apply prison policies to a specific case. At the outset, it is undisputed that there were procedural shortcomings in the process employed in this case. Abramovitz undeniably did not receive a timely and complete statement of the reasons for the disciplinary action leveled against him. In fact, respondents candidly acknowledge that Abramovitz "did not receive a complete copy of all evidence included in [the] incident report . . . until November 16, 2010."

In this case, timely receipt of a complete copy of all the evidence included in the incident report was important to satisfy the considerations of fairness which inform procedural due process in a prison discipline setting. First, receipt of this information relating to the factual basis for this disciplinary decision was necessary to "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 565(1974). Indeed, this case aptly illustrates how misunderstandings are fostered when communications fail, since it is evident that both Abramovitz and his Case Manager were confused for weeks regarding what had transpired in these disciplinary hearings. In addition, the

failure to timely provide this information to Abramovitz impeded and frustrated the petitioner's efforts to seek redress in this matter from prison officials, thus impairing the ability of prison officials to fulfill one of the Supreme Court's mandates in this field, "to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will [have the opportunity to fully and fairly examine a prisoner's claims on their merits]." Wolff v. McDonnell, 418 U.S. at 565.  This case also illustrates another potential harm which flows from untimely and inadequate notice of disciplinary action: "Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others." Wolff v. McDonnell, 418 U.S. at 565.  Indeed, the failure to provide the petitioner with these records in a timely fashion plainly placed him "at a severe disadvantage in propounding his own cause," since it completely prevented Abramovitz from having his claims considered on their merits by prison officials through the grievance process. Thus, the failure of communication in this case directly implicated the procedural due process concerns identified by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 565(1974).

Moreover, on the unique facts of this case we believe that Abramovitz has also met his obligation of showing "prejudice from the agency's [alleged] failure to follow

its own regulations. See Thibodeau v. Watts, 2006 WL 89213, at *4 (M.D.Pa.)(Caldwell, J.)(citing Von Kahl v. Brennen, 855 F.Supp. 1413, 1418 (M.D.Pa.1994))". Fernandes v. Warden, USP-Lewisburg, No. 06-2394 2007 WL 1120520, * 2 (M.D.Pa. April 13, 2007). In this case there was a direct demonstrable prejudice to Abramovitz which flowed from these procedural failings, since these shortcoming completely foreclosed any meaningful agency review of this disciplinary action.

Indeed, by November 2010, this case presented Abramovitz with a perfect, prejudicial dilemma. If Abramovitz had sought to appeal this disciplinary action when he received his first, flawed, notice of that action on October 28, 2010, his appeal would have been uninformed and undocumented. Therefore, under prison regulations the appeal would have been subject to dismissal since it would have lacked necessary supporting paperwork. Yet, when Abramovitz waited until November 16, 2010, the date upon which the Bureau of Prisons corrected this flawed paperwork, agency administrative relief was totally foreclosed to him on the grounds that Abramovitz's appeal was untimely. Moreover, prison officials adopted this posture despite the fact that Abramovitz alleges without contradiction that he had been assured that his

administrative appeals deadlines would be calculated from the date upon which he was

provided complete paperwork relating to this disciplinary action.[2]

In the past, when confronted with prison administrative decisions that were

procedurally flawed, this Court has remanded matters to the Bureau of Prisons to

enable that agency to correct the procedural shortcomings in its initial decisions. See

Krueger v. Martinez, 665 F.Supp.2d. 477, 484-86 (M.D. Pa. 2009).  This is the course

that we recommend here.  Since Abramovitz's disciplinary initial disciplinary hearing

process was flawed in a material and prejudicial way due to the failure to provide him

---

[2]We note that the respondents have urged us to recommend that the petition
be dismissed for failure to exhaust these administrative remedies.  While the
courts have crafted an equitable administrative exhaustion requirement in federal
habeas petitions, Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998), this
exhaustion requirement will be excused when the facts of a case reveal that rigid
application of the doctrine would be futile or inequitable. Von Kahl v. Brennan,
855 F.Supp. 1413, 1416-7 (M.D.Pa. 1994). Here we find that dismissing the
petition for failure to exhaust would not be appropriate. Abramovitz attempted to
exhaust his administrative remedies, but alleges that he was advised to wait until
the Bureau of Prisons corrected its initial incomplete and flawed notice of
disciplinary decision before appealing. Abramovitz followed this guidance, and
filed a timely appeal once he received the evidence underlying this disciplinary
decision on November 16, 2010, only to be informed that the merits of his appeal
would not be considered because his time for filing an appeal was now being
calculated from the date of his receipt of the initial admittedly flawed and
incomplete notice of action from the Bureau of Prisons. In this setting where an
inmate received conflicting advice regarding filing deadlines, is provided
incomplete documentation from the Bureau of Prisons, and then is denied
consideration of his claims on their merits because he followed what he
understood to be the agency's advice, it would not be appropriate to dismiss this
petition due to the inmate's failure to exhaust his administrative remedies.

with a timely and adequate notice of this discipline it is recommended that this matter be remanded for further disciplinary proceedings that provide Abramovitz with adequate and timely notice, and a timely and complete statement of reasons for the agency's actions.[3]

IV.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be GRANTED, in part, in that this matter should be remanded to the DHO for further disciplinary

---

[3]In reaching this result we emphasize the very narrow nature of our recommendation. We find that Program Statement 7300.09, scrupulously applied, satisfies procedural due process. We simply conclude on the unique facts of this case–facts conceded by the respondents–that the juxtaposition of a procedurally flawed notice with a rigidly applied procedural bar to administrative appeals denied this inmate procedural due process. Because we simply find that the procedures used in this case were flawed in ways which did not permit the Bureau of Prisons the opportunity to fully consider the merits of Abramovitz's claims, and recommend remand on this narrow ground, we do not reach the merits of any final agency actions, do not intimate what result may be appropriate in this case, and do not address any of the other claims advanced by the petitioner. Instead, we believe that considerations of comity and deference to agency decision making should permit the Bureau of Prisons to first assess this matter in a fashion which fully satisfies the requirements of procedural due process. Further, since we have found that the procedures employed during Abramovitz's hearing at the halfway house were adequate, we believe that procedural due process can be satisfied by simply remanding this matter to the DHO for review, and then ensuring that Abramovitz receives a timely and complete notification of that DHO review, so he can then timely pursue his administrative remedies.

proceedings that provide Abramovitz with adequate and timely notice, and a timely and complete statement of reasons for the agency's actions.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may  accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of August 2011.


_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge

22